ZEHMER, Judge.
Appellant, Maxwell Andrews, appeals an order of the State Retirement Commission denying him line-of-duty disability retirement benefits. He contends the Commission’s decision is not supported by the evidence and that the Commission misinterpreted existing case law.
Appellant was hired January 3, 1977, by the Washington County School Board as a horticultural instructor. His job duties included both classroom instruction and hands-on instruction, which required contact with organic materials, fertilizers, pesticides, and herbicides. During the period 1978 to 1985, appellant also owned a nursery and landscaping business, which he operated from his home. Operation of the business entailed contact with organic materials, including soil, peat moss, and fertilizer. Prior to his employment appellant had a history of respiratory illness, and between 1978 and May 1980, he was treated for severe asthmatic bronchitis and emphysema. Appellant smoked before he began his employment for the school board and continued to smoke one to two packs of cigarettes a day until 1983 or 1984.
On May 5, 1980, appellant was exposed to Dysiston, an insecticide, which had been mixed with a bag of fertilizer and placed in his pickup truck. Appellant was hospitalized from May 8, 1980, through May 16, 1980, with acute asthmatic bronchitis superimposed on chronic obstructive pulmonary emphysema. Appellant alleges the hospitalization and his subsequent medical problems were due to this episode of exposure to Dysiston. From May 1980 until his retirement in February 1985, appellant had increasingly severe respiratory problems that adversely affected his ability to work. His actual attendance at work in 1985 was only five days. At the time of his retirement appellant had 8.2 years of creditable service.
Appellant filed for disability benefits in the spring of 1985, but the in-line-of-duty disability retirement benefits were denied by the State Retirement Director. A timely appeal of the final agency action was filed with the State Retirement Commission, and hearings were held on June 16 and June 17, 1986.
Dr. Knowles, a general surgeon, expressed the opinion that appellant’s disability was a result of his exposure to Dysiston in May 1980. However, because the doctor did not know appellant smoked cigarettes and was unaware of the extent of his exposure to herbicides and pesticides at work or whether he wore a protective mask or gloves when working with chemicals, the Commission found Dr. Knowles’ testimony “to be of little value in determining whether there was a causal relationship between [appellant’s] medical impairment and his exposure to Dysiston or other chemicals” (R 342). The Commission also found that the doctor’s description of the May 1980 incident indicated he believed that appellant’s contact to Dysiston was much greater than the actual casual contact described by appellant.
Dr. Herring, a specialist in allergy and immunology, examined appellant on several occasions between April 1984 and April 1985. Dr. Herring opined that the asthmatic component of appellant’s respiratory impairment was aggravated by exposure to house dust, spores of environmental fungi, and mold. The doctor did not specifically *479 attribute appellant’s medical problems to his exposure to volatile chemicals.
Dr. Williams, a pulmonary specialist, treated appellant several times between 1971 and 1985. He stated that chronic exposure to organic materials could aggravate appellant’s respiratory problems, but because these factors were cumulative he could not apportion the factors in appellant’s environment which might have contributed to his disability. The doctor also stated that appellant’s condition was progressive and that he could have developed an impairment over time even if the identified environmental factors had not been present.
The Commission concluded that appellant was totally and permanently disabled “in that he is prevented by reason of acute bronchitis, emphysema and asthma from rendering useful and efficient service as an officer or an employee” (R 342). The Commission found, however, that there was insufficient evidence to support a finding that appellant’s respiratory impairment was aggravated by exposure to Dysiston, stating “the sum of the medical testimony is that the Petitioner’s medical impairment could have been aggravated by exposure to organic materials, could have been aggravated by cigarette smoking, or could have progressed to its current status without any of these environmental factors” (R 343).
The Commission concluded that appellant failed to prove by a preponderance of the evidence that his illness arose out of and in the actual performance of duties required by his employment or that appellant’s disability was sustained in the line of duty. The Commission distinguished Blanton v. Division of Retirement, 480 So.2d 134 (Fla. 1st DCA 1985), stating there were “factors other than those in the work place which may have aggravated Petitioner’s medical problem, causing disability” (R 345). The Commission concluded that appellant was not entitled to in-line-of-duty disability retirement benefits and affirmed the decision of the State Retirement Director.
It being undisputed that appellant is permanently and totally disabled, the pivotal question is “whether [appellant] proved by a preponderance of evidence that (1) his illness was work-related, and (2) his illness was a substantial, producing cause, or an aggravating cause of his permanent disability.” Dixon v. Department of Administration, Division of Retirement, 481 So.2d 52 (Fla. 1st DCA 1985).
We find no error in the Commission’s conclusion that the evidence in this record is insufficient to establish that appellant’s exposure to the Dysiston was the substantial producing or aggravating cause of his disability. The Commission concluded that the evidence “indicates that these environmental factors could have aggravated Petitioner’s preexisting respiratory problems, resulting in disability,” but that “petitioner failed to prove by a preponderance of the evidence that these factors did, in fact, contribute in any degree to the aggravation of his respiratory problems or disability” (R 345). This court may not substitute its judgment for that of the Commission as to the weight of the evidence on any disputed finding of fact where the decision of the Commission is supported by competent, substantial evidence. § 121.23, Fla.Stat. (1985); Havener v. Division of Retirement, 461 So.2d 231 (Fla. 1st DCA 1984). Although the evidence clearly establishes that appellant’s medical condition might have been aggravated by environmental factors, the evidence is not so conclusive that the trier of fact was compelled to find that appellant’s illness was work-related and that the May 1980 exposure to Dysiston was a substantial aggravating cause of his permanent disability.
Dr. Knowles was the only witness who testified that appellant’s medical impairment was definitely attributable to the exposure to Dysiston in May 1980. The Commission, however, discounted his testimony as being of little value because of the doctor’s lack of knowledge of many underlying factors, such as appellant’s smoking habits, the extent of appellant’s exposure to chemicals at work, and, particularly, the *480 doctor’s conflicting description of appellant’s exposure to the Dysiston in May 1980. As the initial finder of fact, the Commission — not this court — has the authority to determine the credibility of witnesses. Cf. Department of Natural Resources v. Edrington, 395 So. 577 (Fla. 1st DCA 1981); Department of Health & Rehabilitative Services v. Career Service Commission, 335 So.2d 611 (Fla. 1st DCA 1976).
Dr. Williams’ testimony was ambiguous at best. He testified that chronic exposure to organic materials, herbicides, and pesticides would be a “continuing insult” to someone of appellant’s medical history, but that appellant’s disease was generally a progressive disease. He also stated that smoking would have a deleterious effect on a person with asthma and bronchitis, and that both smoking and the environmental situation significantly affected appellant’s condition, but that he couldn’t apportion the two.
Dr. Herring testified that the inhalation of organic matter containing fungus substances, to which it had been demonstrated in the past that appellant had an allergic reaction, would cause or aggravate his medical problem. The doctor stated that it was conceivable appellant’s vocation as a horticulturist would “contribute to environmental stresses that would aggravate his problem” (R 250). He was unable, however, to tie appellant’s disability exclusively to the inhalation of herbicides and pesticides because there were so many other many environmental factors that might play a part.
The Commission also had before it evidence that from 1978 to 1985, appellant had his own landscaping business and was in contact with organic materials, including soil, peat moss, and fertilizer. As stated in the Commission’s final order, “the sum of the medical testimony is that Petitioner’s medical impairment could have been aggravated by exposure to organic materials, could have been aggravated by cigarette smoking, or could have progressed to its current status without exposure to any of these environmental factors” (R 343). The Commission did not err in concluding that appellant failed to prove by a preponderance of the evidence that the work-related injury was the “substantial, producing cause or an aggravating cause” of his disability.
AFFIRMED.
THOMPSON and BARFIELD, JJ., concur.